IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: _____

| | |
|---|---|
| PHILLIP WORTHINGTON and TAMELA WORTHINGTON,<br><br>Plaintiffs,<br><br>v.<br><br>THOR MOTOR COACH, INC.,<br><br>Defendant. | **COMPLAINT**<br>(Jury Trial Demanded) |

NOW COME the Plaintiffs, Philip Worthington and Tamela Worthington, by and through their undersigned counsel, complaining of the Defendant, and allege as follows:

## PARTIES AND JURISDICTION

1. Plaintiffs Phillip Worthington and Tamela Worthington (hereinafter referred to as "Plaintiffs") are citizens and residents of Pitt County, North Carolina. Each is over the age of eighteen (18) years of age and each is competent to bring this action.

2. Defendant Thor Motor Coach, Inc. (hereinafter referred to as "Defendant") is a corporation organized and existing under the laws of the State of Delaware. Defendant's principal place of business is located at 701 County Road 15 in Elkhart, Indiana, and Defendant is authorized to do business in the State of North Carolina.

3. The Plaintiffs are informed and believe, and therefore, allege that Defendant has

1

substantial and continuous commercial activity in North Carolina, in that: Defendant advertises its products in North Carolina; Defendant solicited services and products to Plaintiffs in North Carolina; and Defendant's products are regularly sold to individuals living in North Carolina in the ordinary course of business. These acts of Defendant are activities and introductions of goods into the ordinary flow of commerce in North Carolina

4. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 based upon the diversity of citizenship among Plaintiffs and Defendant, and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs. This Court has personal jurisdiction of the parties in this matter pursuant to N.C. Gen. Stat. §1-75.4.

5. Plaintiffs reside in Pitt County, North Carolina, and therefore, venue is proper in the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

6. On or about the 31st day of July, 2018, Plaintiffs purchased a 2018 Tuscany 38SQ Thor Motor Coach (hereinafter "the Coach") from Camping World in Garner, North Carolina for the base purchase price of $298,329.85. Plaintiffs traded in their 2015 Thor 37LX Motor Coach for an allowance of $100,000.00, leaving a net sales price after trade of $198,329.85. Additionally, Plaintiffs paid a documentation fee in the amount of $499.00, and sales tax in the amount of $2,000.00. Plaintiffs also purchased a Good Sam Extended Service Plan for the purchase price of $11,510.25. Plaintiffs purchased a Good Sam Gap Deficiency Waiver Addendum in the amount of $1,495.00. Plaintiffs paid license fees in the amount of $88.00. Plaintiffs purchased a Good Sam

2

Tire and Wheel Warranty in the amount of $1,095.00. Plaintiffs purchased a Good Sam Roadside Assistance Plan in the amount of $899.75. The balance owed to Bank of America on the Plaintiffs' trade-in was $93,720.55. The Plaintiffs paid the sum of $60,000.00 in cash as a down payment on the Coach, leaving a net purchase price of $249,637.40.

7. The Plaintiffs financed the net purchase amount of $249,637.40 with Alliant Credit Union, and since the purchase of the Coach, the Plaintiffs have made all payments due on their loan with Alliant on time. Along with interest, the full amount of the Plaintiffs' obligation to Alliant Credit Union is $469,781.85.

8. The Plaintiffs took possession of the Coach on or about July 31, 2018. The mileage on the Coach's odometer then was 713 miles.

9. When the Plaintiffs purchased the Coach, the representatives of Camping World told the Plaintiffs that there was a list of defects that Camping World was attempting to repair. Those items were listed on Work Order #21121. The mileage on the Coach's odometer, as noted on the Work Order #21121 was 720 miles.

10. The Plaintiffs took their first trip in the Coach to Raleigh on or about August 3, 2018. The Plaintiffs noticed a water leak on the kitchen slide side of the Coach. On or about August, 6, 2018, the Plaintiffs returned the Coach to Camping World in Garner for the purpose of taking pictures of the cracks in the front of the Coach, and to let them inspect scratches and imperfections in the paint, and to show that the Coach's awning was not retracting back as it should, and to get approval for warranty work and repairs to be made on the Coach.

11.     The Plaintiffs took their second trip in the Coach to Myrtle Beach on or about August 31, 2018. On or about the 6th day of September, 2018, the Plaintiffs returned the Coach to Camping World in Garner at the request of Camping World's service writer, Tanner Wright, who completed a work order of the issues regarding the Coach that the Plaintiffs had discovered which needed repairing.  The Plaintiffs added these defects to the Work Order #21642. The mileage on the Coach's odometer, as noted on the Work Order #21642 was 1456 miles.

12.     On October 22, 2018, the Plaintiff, Tamela Worthington, stopped by Camping World in Garner and learned that the paint issues had not been completed and none of the warranty work from the work order had been submitted or finished.

13.     Around November 1, 2018, the Plaintiffs notified Camping World that they would like to pick up the Coach for a trip they had scheduled during the week of Thanksgiving. Camping World's representatives called the Plaintiffs on or about November 7, 2018 to make the Plaintiffs aware of more defects and damage caused by severe mold damage as a result of major leakage in the body of the Coach.

14.     The Plaintiffs immediately notified Defendant Thor's Customer Service Department of the leaks and subsequent water and mold damage. The next day, a field representative from Thor showed up at Camping World in Garner to inspect the Coach, and he was present when a positive pressure test of the Coach was performed, revealing numerous leaks on the roof of the Coach.

15.     After inspecting the Coach on or about November 8, 2018, Defendant Thor's field representative requested the Plaintiffs' permission to take the Coach back to Thor's manufacturing

4

facility in Indiana for inspection and repairs. On or about the 13th day of November, Thor's representative picked up the Coach at Camping World in Garner and drove it to Thor's manufacturing facility in Indiana for the purpose of inspection and repairs.

16. When the Coach arrived back at Camping World in Garner from Thor's manufacturing facility on December 21, 2018, the Plaintiffs noticed numerous substantial defects which were obvious and apparent, including the bedroom and bathroom floor of the Coach which had been covered in water, as evidenced by water stains and dark or wet grout lines, and the Plaintiffs refused to accept delivery of the Coach.

17. On or about December 21, 2018 Thor's representative once again picked up the Coach at Camping World in Garner and drove it to Thor's manufacturing facility in Indiana for inspection and repairs.

18. On or about February 21, 2019, Thor's representative delivered the Coach back to Plaintiffs at Camping World in Garner. The mileage on the Coach, according to its odometer on February 21, 2019 was 4,446 miles.

19. When the Coach arrived back at Camping World in Garner from Thor's manufacturing facility on February 21, 2019, the Plaintiffs noticed numerous substantial defects which were obvious and apparent, including

    a.    water on the floor and in the grout under the sofa slide

    b.    stains on the Captain's seat

    c.    drops of water around the driver's window

  d. closet door on left side in bedroom has left side latch broken and the door is stuck open, and there is damage to the other door

  e. water stains, indicating water damage, on the front of the refrigerator and freezer

  f. water stains on wall panel adjacent to dishwasher

  g. rear engine door cover was open and will not latch

  h. left side of Coach outside of sofa slide contained water, indicating seals weren't properly sealed

  i. passenger side of Coach contained water under the slides indicating seals weren't properly sealed

  j. wood at the washer/dryer closet was damaged

  k. window screen over the kitchen sink was broken and bent

  l. moisture meter readings indicated that material over the sink and around the backsplash was damp

  m. moisture meter readings indicated that the material around the driver's side window was damp

  n. moisture meter readings indicated that the cabinets which were replaced in the Coach contain moisture in the plywood and in the tops of the cabinets

  o. at highway speeds, there is a tremendous amount of wind noise in the driver's compartment

6

20. Plaintiffs have only taken the Coach on two trips since taking delivery of the Coach on July 31. The total mileage which the Plaintiffs have put on the Coach, according to the odometer readings noted on the sales documents and work orders, is 743 miles. Plaintiffs have allowed Thor more than a reasonable amount of time to repair the Coach's defects.

21. At all relevant times to this lawsuit, Plaintiffs have followed the recommended maintenance and moisture management guidelines contained in the Owner's Manual.

22. The Plaintiffs allege that the Coach has defects, which include, but are not limited to the following:

    a. holes throughout the body of the Coach which allow leakage of rainwater from the outside

    b. mold which accumulated inside the Coach as a result of rainwater leakage

    c. cracked mirror

    d. peeling paint and paint scratches

    e. front fiberglass cracked

    f. numerous scratches on the exterior of the Coach

    g. numerous paint imperfections on the exterior of the Coach

    h. Coach's awning not retracting all the way in; streaks across windshield shade

    i. water stains on the ceiling of the Coach

    j. burn marks on the countertop

    k. backsplash unglued and fallen off the wall

7

Case 4:19-cv-00044-BO   Document 1   Filed 03/29/19   Page 7 of 13

l. loose molding

m. plastic molding cracked

n. rust on the exterior of the Coach

o. scratches on the body of the Coach

p. buff burns on the exterior of the Coach

q. broken television latch

r. crease in cargo door on passenger side

s. bunk panels not put together correctly, and resulting damage to bunk material

t. gouges in tile from slide in front of sofa

u. corner fascia on drivers slide cracked

v. defective molding around exterior of TV

x. cracked tile inside the Coach in front of sofa

y. crown molding in kitchen not meeting correctly

z. water wicked inside insulation

23. Despite reassurances and promises from Thor that the Coach would be repaired so that it could be used and enjoyed by the Plaintiffs, Thor has never completed the repairs.

**FIRST CLAIM FOR RELIEF: BREACH OF WARRANTY**

24. The allegations contained in Paragraphs 1-23 above are realleged, and the same are incorporated by reference as if fully set out herein.

25. The Plaintiffs are informed and believe, and therefore, allege that Thor provides an express limited warranty on its products. The Coach came with an express limited warranty which covered defects in the workmanship performed and/or materials used to assemble the Coach.

26. The Plaintiffs allege that the Coach's defects, which are listed in Paragraphs 19 and 22 above, are covered by Thor's express limited warranty.

27. The Coach was not sold to Plaintiffs as warranted nor as represented in that it has repeatedly malfunctioned due to defective parts and workmanship, including but not limited to leaks, broken seals, mold, peeling and cracked paint, and such other problems and/or defects as noted in Paragraphs 19 and 22 above.

28. Plaintiffs have allowed Thor several attempts to cure the defects to the Coach.

29. Thor's breach of warranty directly and proximately caused actual injury to Plaintiffs in an amount in excess of $75,000.00, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION:
## PRODUCT LIABILITY AND BREACH OF WARRANTY

30. The allegations contained in Paragraphs 1-29 above are realleged, and the same are incorporated by reference as if fully set out herein.

31. Defendant Thor is a manufacturer that designs, assembles, fabricates, produces, constructs or otherwise prepares a product, as contemplated under the provisions of the North Carolina Products Liability Act as set forth in N.C. Gen. Stat. §§99B-1 et seq, and similar statutes.

32. Under the provisions of the North Carolina Products Liability Act, Defendant Thor owed a duty to Plaintiffs to provide a product that was reasonably safe in construction that did not

9

materially deviate from applicable design specification and that otherwise did not deviate materially from identical units in Thor's product line.

33. Under the provisions of the North Carolina Products Liability Act, and similar statutes, Defendant Thor owed a duty to Plaintiffs to sell a product that conformed to Thor's express warranties.

34. Thor breached its duty to Plaintiffs as a result of the defects in the workmanship performed and/or the materials used to assemble the Coach which caused the defects which are listed in Paragraphs 19 and 22 above.

35. Thor is liable to Plaintiffs for property damages it directly and proximately caused to Plaintiffs in an amount in excess of $75,000.00, in an amount to be determined at trial.

**THIRD CAUSE OF ACTION:**
**MAGNUSON MOSS WARRANTY ACT**
**15 U.S.C. 2301 et seq.**

36. The allegations contained in Paragraphs 1-35 above are realleged, and the same are incorporated by reference as if fully set out herein.

37. Under the provisions of the Magnuson Moss Warranty Act as set forth in 15 U.S.C. 2301 et seq., the Plaintiffs are "consumers," and the Defendant Thor is a "seller" and "warrantor" as defined by the Warranty Act, 15 U.S.C. 2301(4), (5).

38. Under the provisions of the Magnuson Moss Warranty Act, the Coach is a "consumer product," 15 U.S.C. 2301(1).

39. The express warranties given by Defendant Thor and/or required by statute to be

10

given by Defendant Thor, pertaining to the Coach are "written warranties" as defined in the Magnuson Moss Warranty Act, 15 U.S.C. 2301(6).

40. This sales transaction is subject to the provisions and regulations of the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, et seq.

41. Pursuant to the Magnuson Moss Warranty Act, certain language is required to be included in the contract of sale, 15 U.S.C. 2302, et seq.

42. Defendant Thor owed a duty to Plaintiffs to provide a product that complied with its warranties. Alternatively, Thor owed a duty to Plaintiffs to make its warranty term disclosures and its actions fully comply with all provisions of the Magnuson Moss Warranty Act and its applicable regulations.

43. As a result of its failure to honor its warranties, Defendant Thor has breached its duties to Plaintiffs under the provisions of the Magnuson Moss Warranty Act.

44. As a result of its failure to ignore the rules and regulations surrounding the Magnuson Moss Warranty Act, Defendant Thor has breached its duties to Plaintiffs.

45. Pursuant to the Magnuson Moss Warranty Act, Plaintiffs are entitled to recovery of all monies paid on the Coach, and to damages in the form of all out-of-pocket expenses, and all other damages, including consequential damages, as determined by the trier of fact.

46. Thor is liable to Plaintiffs for damages in excess of $75,000.00, together with all costs and actual reasonable attorney fees as provided for by statute and the applicable Code of Federal Regulations, and for whatever other legal and equitable relief the Court may deem proper.

11

## FOURTH CAUSE OF ACTION:
## UNFAIR AND DECEPTIVE TRADE PRACTICES
## N.C. Gen. Stat. §75-1.1

47. The allegations contained in Paragraphs 1-46 above are realleged, and the same are incorporated by reference as if fully set out herein.

48. Defendant Thor committed one or more unfair or deceptive act or practices which remain uncured in violation of the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §75-1.1.

49. Defendant Thor's actions were in or affecting commerce.

50. Defendant Thor's conduct caused injury to the Plaintiffs.

51. Thor is liable to Plaintiffs for damages in excess of $75,000.00, together with all costs and actual reasonable attorney fees as provided for by statute, including treble damages as authorized by N.C. Gen. Stat. §75-16, and for whatever other legal and equitable relief the Court may deem proper.

**WHEREFORE**, the Plaintiffs pray this Honorable Court as follows:

1. That judgment be entered against Thor Motor Coach, Inc. in an amount to be determined at trial;

2. That the Plaintiffs' purchase contract be rescinded and that all monies that Plaintiffs have paid be returned to Plaintiffs;

3. That treble damages be awarded to Plaintiffs against Thor for unfair and deceptive trade practices under §75-1.1 of the North Carolina General Statutes;

4. For an award of attorney's fees to Plaintiffs under N.C. Gen. Stat. §75-16.1;

5. For an award of attorney's fees to Plaintiffs under N.C. Gen. Stat. §6-21.6 and §6-21.7;

6. That Thor Motor Coach, Inc. be taxed with the costs of this action;

7. That as an alternative to treble damages pursuant to N.C. Gen. Stat. §75-1.1, that the Court award punitive damages to Plaintiffs against Defendant pursuant to N.C. Gen. Stat. §1D-1;

8. That as an alternative, Defendant Thor provide a replacement Coach to Plaintiffs.

9. That the Court award Plaintiffs such other and further relief as it may deem just and proper; and

10. Plaintiffs demand a trial by jury on all issues so triable.

This the 29th day of March, 2019.

                                          **GAYLORD, McNALLY, STRICKLAND & SNYDER, L.L.P.**

BY: /s/
Catherine E. Thompson
State Bar No. 14334
Post Office Drawer 545
498 Red Banks Road
Greenville, North Carolina 27835
Telephone: (252) 321-7111
Facsimile: (252) 321-7112
cathythompson@earthlink.net
Attorneys for Plaintiffs